**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| JOSEPH BARPAR, Individually and on Behalf of All Others Similarly Situated, 950 Murphy Court New Windsor, Maryland 21776<br><br>(Carroll County, Maryland),<br><br>                Plaintiff,<br><br>      v.<br><br>ELANCO ANIMAL HEALTH INCORPORATED 2500 Innovation Way Greenfield, Indiana  46140<br><br>JEFFREY N. SIMMONS c/o Elanco Animal Health Incorporated 2500 Innovation Way Greenfield, Indiana  46140<br><br>– and –<br><br>TODD S. YOUNG c/o Elanco Animal Health Incorporated 2500 Innovation Way Greenfield, Indiana  46140,<br><br>              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Barpar ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the

1

Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Elanco Animal Health Incorporated ("Elanco" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Elanco securities between November 7, 2023 and June 26, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Elanco is an animal health company that develops, manufactures, and markets products for pets and farm animals.  The Company is developing, *inter alia*, Zenrelia, a "safe, highly effective, and convenient" once-daily oral Janus kinase ("JAK") inhibitor for canine dermatology, and Credelio Quattro, a broad spectrum parasiticide product for dogs.

3.      In November 2023, Elanco set a timeline for the U.S. approval of both Zenrelia and Credelio Quattro in the first half of 2024.

4.      Then, in May 2024, Elanco set a timeline for the U.S. approval ***and*** commercial launch of Zenrelia in third quarter of 2024, as well as the U.S. approval of Credelio Quattro in the third quarter of 2024 with a commercial launch set for the fourth quarter of 2024.

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Zenrelia was less safe than the Company had led investors to believe; (ii) Elanco was unlikely to meet its own previously issued timeline for the U.S. approval and commercial launch of both Zenrelia and Credelio Quattro; (iii) accordingly, the Company's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     On June 27, 2024, the Company issued a press release providing an "innovation update" on Zenrelia and Credelio Quattro and their U.S. Food and Drug Administration ("FDA") approval timelines.  The press release revealed that Elanco expected the U.S. label for Zenrelia to include a boxed warning on safety "based on the outcome of a trial with unvaccinated dogs dosed at 3x the label dose," which the Company believed would "slow the product adoption curve in the U.S." and initially limit the number of expected treatment days—*i.e.*, the number of days Zenrelia can safely be administered to vaccinated dogs—by approximately 25%.  Further, Elanco stated that it was now expecting Zenrelia to receive FDA approval in the third quarter of 2024, leading to a potential commercial launch in the ***fourth*** quarter of 2024, and that Credelio Quattro is expected to receive FDA approval in the ***fourth*** quarter of 2024.

7.     On this news, Elanco's stock price fell $3.69 per share, or 20.53%, to close at $14.28 per share on June 27, 2024.

8.     On an August 4, 2024 call held to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call"), Elanco's Chief Executive Officer ("CEO") Defendant Jeffrey N. Simmons ("Simmons") provided further details on the Zenrelia boxed warning.  Specifically, Defendant

Simmons stated that "this label language will slow the initial product adoption curve in the U.S. as we believe it will require focused veterinary education on the product" and "[o]ur expectations for treatment days being limited by approximately 25% is based on expected language in the box warning related to vaccine usage."

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Elanco's most recently filed Quarterly Report with the SEC, as of August 5, 2024, there were 494,325,065 shares of Elanco common stock outstanding.  Elanco's securities trade on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Elanco securities located within the U.S., some of whom undoubtedly reside in this Judicial District.  In addition, Plaintiff resides within this Judicial District.

13.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Elanco securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Elanco is incorporated in Indiana with principal executive offices located at 2500 Innovation Way, Greenfield, Indiana 46140.  The Company's common stock trades in an efficient market on the NYSE under the ticker symbol "ELAN."

16.     Defendant Simmons has served as Elanco's President and CEO at all relevant times.

17.     Defendant Todd S. Young ("Young") has served as Elanco's Executive Vice President and Chief Financial Officer at all relevant times.

18.     Defendants Simmons and Young are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Elanco's SEC filings, press releases, and other market communications.   The Individual Defendants were provided with copies of Elanco's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Elanco, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     Elanco and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Elanco is an animal health company that develops, manufactures, and markets products for pets and farm animals.  The Company is developing, *inter alia*, Zenrelia, a "safe, highly effective, and convenient once-daily oral" JAK inhibitor for canine dermatology, and Credelio Quattro, a broad spectrum parasiticide product for dogs.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on November 7, 2023, when Elanco issued a press release during pre-market hours announcing the Company's Q3 2023 results.  The press release stated, in relevant part:

> "Elanco delivered a strong third quarter across both pet health and farm animal, with revenue, adjusted EBITDA, and adjusted EPS growth. Constant currency revenue growth of 5 percent was driven by accelerating contribution from innovation, stabilizing core volumes, price growth and improved market conditions in Europe. In constant currency, Pet Health grew 6% and Farm Animal grew 4%, enabled by our differentiated global omnichannel execution, strategic leverage of our diverse portfolio, and our enhanced capabilities and leadership," said [Defendant] Simmons[.] "***Our innovation pipeline remains on track, with potential blockbuster products Credelio Quattro [. . .] and our differentiated JAK inhibitor for canine dermatology, which upon approval will be known as Zenrelia, [. . .] on a path toward U.S. approval in the first half of 2024. We are also investing in important commercial capabilities and expanded share of voice to drive our current portfolio and expected launches in 2024.***"[1]

---

[1] All emphases included herein are added unless otherwise indicated.

23.     That same day, Elanco hosted an earnings call with investors and analysts to discuss

the Company's Q3 2023 results (the "Q3 2023 Earnings Call").  During the scripted portion of the

Q3 2023 Earnings Call, Defendant Simmons stated, in relevant part:

> In the third quarter, price growth of 4% and sequential improvement in year-over-year volume growth was driven by both Pet Health and Farm Animal leading to adjusted EBITDA growth of 5% and adjusted EPS growth of 6%. ***We made significant progress on innovation in the third quarter completing FDA submissions for three late-stage potential blockbuster products, all with a path towards approval in the first half of 2024***.

24.     On February 26, 2024, Elanco issued a press release announcing the Company's

Q4 and full year 2023 results.  The press release quoted Defendant Simmons as stating, in relevant

part:

> "As we look at 2024, we expect our existing portfolio to deliver constant currency revenue growth of 1% to 3%, with both pet health and farm animal expected to contribute to growth. ***We remain encouraged by our three late-stage pipeline products under regulatory review that have a path toward approval in the first half of 2024 and would be additive to our topline expectations in the second half of the year***. Continuing our efforts to improve efficiency, today we announced a strategic restructuring to continue the shift of our investments into more significant value creation areas. We are investing to enhance our launch efforts, prioritizing cash flow improvements and meaningfully reducing leverage, from both our improving free cash flow and the expected sale of our aqua business. We believe that the investments we are making in 2024 will provide the foundation to enable sustained revenue growth over the medium and long term."

25.     That same day, Elanco filed an Annual Report on Form 10-K with the SEC,

reporting the Company's financial and operational results for the year ended December 31, 2023

(the "2023 10-K").  In providing an overview of the Company, the 2023 10-K stated, in relevant

part:

> Elanco [. . .] is a global leader in animal health, dedicated to innovating and delivering products and services to prevent and treat disease in farm animals and pets. We partner with farmers, pet owners, veterinarians and society to create value and help our customers improve the health of animals in their care, while also making a meaningful impact on the communities we serve. Our diverse, durable product portfolio is sold in more than 90 countries and serves animals across many

species, primarily: dogs and cats (collectively, pet health) and cattle, poultry, swine, sheep and aqua (collectively, farm animal). With this ability to reach the world's animals, we are committed to fulfilling our customer promise: *To be your advocate and continually earn your trust, improving the health of animals and creating value through innovative products, expertise and service*. Through our customer promise and our commitment to excellence, we strive to advance the well-being of animals, people and the planet, enabling us to realize our vision of Food and Companionship Enriching Life.

\*\*\*

We have continuously strengthened and expanded our three-pronged strategy: *Innovation, Portfolio and Productivity*, which remains our foundation for sustained growth and profitability. Over time, we expect to achieve revenue growth and improved profitability by delivering consistent, high-impact Innovation and prioritizing large market opportunities in major geographies. ***Our focused strategy prioritizes certain assets, including late-stage potential blockbusters, while maximizing life cycle management and refilling the early-stage pipeline to achieve a consistent flow of innovation***. We also continue to optimize our diverse Portfolio to grow, leveraging our deep, established customer relationships and expanding product offerings. We will also continue to drive geographic and channel expansion, to reach more of the world's animals. Further, we continue to focus on our strategic *Productivity* initiatives to improve earnings and cash flows.

26.     Appended to the 2023 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, attesting that "the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

27.     Also on February 26, 2024, Elanco hosted an earnings call with investors and analysts to discuss the Company's Q4 2023 results (the "Q4 2023 Earnings Call").  During the scripted portion of the Q4 2023 Earnings Call, Defendant Elanco stated, in relevant part:

On the late-stage pipeline, our three differentiated assets – Credelio Quattro, Zenrelia, and Bovaer – are all progressing with the FDA. As we've shared previously, the regulatory process is rolling and iterative at this stage, and we are in ongoing productive dialogue with the FDA's Center for Veterinary Medicine. ***These three potential blockbusters continue to have a path towards U.S. approval in the first half of 2024***.

28.     In addition, during the Q&A portion of the Q4 2023 Earnings Call, when asked to discuss the remaining steps to obtain U.S. approval for Zenrelia and the Company's interactions

8

with the FDA, Defendant Simmons responded, in relevant part, "no update today on the Zenrelia timeline. We continue really with no change in terms of just a very productive dialogue with the FDA. ***We believe that market adoption [. . .] will be driven on value and execution***, but again the dialogue with the FDA is going well, no change."

29.     Finally, during the Q&A portion of the Q4 2023 Earnings Call, when asked to discuss the Company's thoughts on the "go-to-market strategy for Zenrelia," the "differentiation of [Zenrelia]," "leveraging distribution, price, [and] how [Elanco] can leverage also [its] position even in online channels," Defendant Simmons responded, in relevant part:

> I think we come back consistently as we look at this market and see that there are still a lot of unmedicalized dogs that are leaving vets without being treated. There's a strong desire for more choice by vets and pet owners, and these fundamentals we believe matter, that this is a market that wants choice, and it's globalizing[.] I would emphasize that we continue to feel strongly that our differentiation is going to be-- is key as well.
>
> When you look at how we're going to launch this product, maybe just a couple points. First of all, we keep coming back to the two most important pillars, our value and then execution. Value gets around the differentiation in the product, the product itself, the portfolio that it's going to be in, and then as you look at execution, the first thing that we really focused on [. . .] was getting the share of voice at a level that can be extremely competitive, and we believe we're there now. We've got this sales force in place out there [. . .] preparing--and you know, we need to create share of voice high enough to create awareness at the vet clinic so that when the product gets into the market, that vet clinic is aware, and then we will start to turn up additional factors like digital and [direct-to-consumer], so that's going to be the staged approach.
>
> We're still looking at distribution. The great news is we've got lots more options with distribution, given our [enterprise resource planning] set-up. We will intend to price to value and focus--you know, we believe innovation will be rewarded and differentiation will be rewarded, so we will focus on a value-based pricing approach relative to our differentiation.

30.     On May 8, 2024, Elanco issued a press release announcing its Q1 2024 results.  The press release stated, in relevant part:

"We are encouraged by the strong progress of our late-stage pipeline, which has advanced significantly over the last several months. ***Based on our dialogue with the FDA and the status of packages submitted, we have increased certainty in the expected approval timing for [. . .] Zenreli[] and Credelio Quattr[].*** We continue to expect to bring differentiated products to the market, with revenue contribution expected from all three new products in the second half of 2024."

\*\*\*

- For Zenrelia, a JAK Inhibitor targeting control of pruritus and atopic dermatitis in dogs, the company believes the FDA has all data necessary to complete its review. All technical sections, including the label, are expected to be approved before the end of June. Full approval is expected in the third quarter after an expected 60-day administrative review period. Additionally, Zenrelia has been submitted in nine additional markets, including the EU, UK, Australia, Canada and Japan, with international approvals expected to begin in late 2024.

- For Credelio Quattro, a broad spectrum oral parasiticide covering fleas, ticks and internal parasites, the company believes the FDA has all data necessary to complete its review. All technical sections, including the label, are expected to be approved before the end of June. Full approval is expected in the third quarter after an expected 60-day administrative review period.

31.     That same day, Elanco hosted an earnings call with investors and analysts to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call").  During the scripted portion of the Q1 2024 Earnings Call, Defendant Simmons stated, in relevant part:

We remain confident in our late-stage innovation. Based on our dialogue with the FDA and the status of the packages submitted, we have increased certainty in the expected approval timing for Bovaer, Zenrelia, and Credelio Quattro. We continue to expect to bring differentiated products to the market with revenue contribution expected from all three products in the second half of the year.

\*\*\*

[B]oth Zenrelia and Credelio Quattro have progressed since February, and we believe the FDA has all the data necessary to complete its review of these products. For both products, we expect that all technical sections, including labels will be approved by the FDA before the end of June. After the approval of all technical sections, each new animal drug application, or NADA undergoes an expected 60-day final administrator review, putting our full approval expectations in Q3.

Now a little more on each product specifically. Zenrelia is our JAK inhibitor targeting the control of pruritis and atopic dermatitis in dogs at least 12 months of

age. We remain confident this product will be differentiated from the current market option. Our market research shows clear interest and desire for additional options as we will continue to prioritize the optimization of the label to provide the most meaningful differentiation. We expect to have a very efficient approval to launch window targeting product in the market before the end of the third quarter. Additionally, we expect approval for Zenrelia in several international markets starting late in 2024, our fastest globalization effort ever.

Now moving to Credelio Quattro, our broad spectrum parasiticide targeting coverage for fleas, ticks, heartworms and other internal parasites in a single monthly dose. As we have shared previously, we expect Quattro will be differentiated from incumbent products in the markets with broader coverage. Specifically, we expect to have coverage of tapeworms, including those known to be zoonotic or posing risk to humans that cannot effectively be prevented by eliminating fleas. We expect this broader coverage and the ability to prevent heartworms after the first monthly dose that we are seeking to demonstrate to the FDA will position Credelio Quattro uniquely in the market. For Quattro, we're targeting launch in the fourth quarter of this year.

32.     In addition, during the Q&A portion of the Q1 2024 Earnings Call, when asked to discuss the Company's milestones and recent interactions with the FDA, Defendant Simmons responded, in relevant part:

First, we are very pleased with the progress we've made in these key assets since February - actually, a lot of progress has happened, and that's driven our increased certainty as we move closer to the end of this approval process. Yes, the dialogue with the FDA has been rolling and iterative. We've been in a productive engagement with them, [. . .] it's been fair, constructive, frequent, and really over the last several months, we've been responding to the questions from the agency, which is very common. I believe the Animal Drug User Fee Act, or ADUFA is working specific on these assets, it's been constructive.

So what's changed and what has not changed since February? What has changed is many sections and subsections of these submissions have been approved, both products have progressed. Simply, though, the back and forth interactions have taken slightly more time than we estimated this path to first half approval, thus we're now moving the final 60 day administrative review into the third quarter. I think importantly, we have increased certainty in the timing from all of this interaction that you mentioned.

I think it's also important to say what hasn't changed. What hasn't changed is we continue to expect the products to be differentiated versus the current offering. We still expect all technical inspections, including the label, to be approved in the first half or by the end of June, and we expect that revenue contribution is still expected

in this second half for these two products, as well as Bovaer. Again, importantly, we believe the FDA has what they need for the approvals and the launch planning, to your question on that, and the marketing is well underway.

33.     Also on May 8, 2024, Elanco issued an investor presentation in connection with the Q1 2024 Earnings Call (the "Q1 2024 Investor Presentation").  A slide of the Q1 2024 Investor Presentation issued a timeline for the U.S. approval *and* commercial launch of Zenrelia in the third quarter of 2024, as well as the U.S. approval of Credelio Quattro in the third quarter of 2024 with a commercial launch set for the fourth quarter of 2024:



34.     The statements referenced in ¶¶ 22-33 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about, the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Zenrelia was less safe than the Company had led investors to believe; (ii) Elanco was unlikely to meet its own previously issued timeline for the U.S. approval and commercial launch of both Zenrelia and Credelio Quattro; (iii) accordingly, the Company's business and/or financial prospects were overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

35.     On June 27, 2024, the Company issued a press release providing an "innovation update."  The press release stated, in relevant part:

Elanco [. . .] today announced updates to the expected U.S. Food and Drug Administration (FDA) approval timelines for Zenrelia and Credelio Quattro.

For Zenrelia, the company has received confirmation from FDA that all major technical sections (Effectiveness, Safety and Chemistry, Manufacturing, and Controls (CMC)) are complete as of late June. For the Labeling minor technical

section, earlier this week the Company aligned with FDA on the language and expects to receive the completion letter by mid-July. The 60-day final administrative review will follow, placing expected approval late in the third quarter of 2024. *The company now anticipates a U.S. launch for Zenrelia in the fourth quarter of 2024*.

"Elanco continues to view Zenrelia as positively differentiated for effectiveness and convenience, which we believe can address unmet needs in the market. *However, we expect the U.S. label will include a boxed warning on safety based on the outcome of a trial with unvaccinated dogs dosed at 3x the label dose*," said Bobby Modi, Elanco Executive Vice President U.S. Pet Health and Global Digital Transformation. "*While we remain confident in Zenrelia's blockbuster potential, we believe this warning will slow the product adoption curve in the U.S. and initially limit the number of expected treatment days by approximately 25%.* We plan to conduct additional research to support an improved label over time."

*** 

For Credelio Quattro, two of three major technical sections – Effectiveness and Safety – are complete, however, in June, the Company received an incomplete letter for the CMC major technical section. Elanco has already submitted its response to the two questions in the letter, which did not require any additional data generation. The FDA has offered a shortened, 60-day review timeline for Elanco's response. Following this, the minor technical section reviews will be completed, including Labeling. *The product is then expected to go through the 60-day final administrative review, placing the expected approval in the fourth quarter of 2024, with U.S. launch expected in the first quarter of 2025*. The Company continues to expect positive differentiation related to effectiveness.

36.     On this news, Elanco's stock price fell $3.69 per share, or 20.53%, to close at $14.28 per share on June 27, 2024.

37.     On August 4, 2024, Elanco held the Q2 2024 Earnings Call.  During the scripted portion of the Q2 2024 Earnings Call, Defendant Simmons provided further details on the Zenrelia boxed warning, stating, in relevant part:

As shared in June, the expected U.S. label will include a box warning related to our vaccine response study. *We expect this label language will slow the initial product adoption curve in the U.S. as we believe it will require focused veterinary education on the product. Our expectations for treatment days being limited by approximately 25% is based on expected language in the box warning related to vaccine usage*. We have done extensive and broad market research that concludes efficacy and value matter most to veterinarians.

13

**SCIENTER ALLEGATIONS**

38.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Elanco securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Elanco securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Elanco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Elanco;

- whether the Individual Defendants caused Elanco to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Elanco securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

45. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Elanco securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Elanco securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

46. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

47. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

48. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

50.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Elanco securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Elanco securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to inflate the market for Elanco securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Elanco's finances and business prospects.

52.     By virtue of their positions at Elanco, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

53.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Elanco, the Individual Defendants had knowledge of the details of Elanco's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Elanco.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Elanco's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Elanco securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Elanco's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Elanco securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55.     During the Class Period, Elanco securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Elanco securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Elanco securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Elanco securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

58.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of Elanco, and conducted and participated, directly and indirectly, in the conduct of Elanco's business affairs.  Because of their senior positions, they knew the adverse non-public information about Elanco's misstatement of income and expenses and false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Elanco's financial condition and results of operations, and to correct promptly any public statements issued by Elanco which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Elanco disseminated in the marketplace during the Class Period concerning Elanco's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Elanco to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Elanco within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Elanco securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Elanco.  By reason of their senior management positions and/or being directors of Elanco, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Elanco to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Elanco and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Elanco.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  October 7, 2024

Respectfully submitted,

*/s/ Daniel S. Sommers*
Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)

J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, __Joseph Barpar_____, make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Elanco Animal Health Incorporated

("Elanco") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Elanco securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Elanco securities during the Class Period as specified in the

Complaint, including providing testimony at deposition and trial, if necessary.  I understand that

the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in Elanco securities during the Class

Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of

the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

Docusign Envelope ID: A09AE566-0807-447D-A7ED-FA2DC5FEC7C9

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____
7/16/2024

**(Date)**

DocuSigned by:

*Joseph Barpar*

_____
4064B57C94E4439...

**(Signature)**

Joseph Barpar

_____

**(Type or Print Name)**

**Elanco Animal Health Incorporated (ELAN)**                                    **Joseph Barpar**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/25/2024 | 30 | $18.1300 |
| Purchase/Acquisition | 6/26/2024 | 30 | $17.8500 |
| Purchase/Acquisition | 6/26/2024 | 15 | $17.8200 |
| Purchase/Acquisition | 6/26/2024 | 15 | $17.9500 |
| Purchase/Acquisition | 6/26/2024 | 10 | $17.9100 |