**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| IN RE ELANCO ANIMAL HEALTH INCORPORATED SECURITIES LITIGATION | Case No. 1:24-cv-02912-BAH |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **HEARING REQUESTED** |

<u>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**</u>
<u>**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**</u>

Scott Lerner (D. Md. Bar No. 13327)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Tel. (202) 636-3600

Stacy Nettleton (*admitted pro hac vice*)
Susan L. Grace (*admitted pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200

*Counsel for Defendants Elanco Animal*
*Health Incorporated, Jeffrey N. Simmons,*
*and Todd S. Young*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT...................................................................................................................... 2

I.    The FAC Fails to State a Section 10(b) Claim .......................................................2

      A.    The Opposition Fails to Show that Any Challenged Statement is Actionable ........2

            1.    The Vaccine Study Does Not Render Any Statement Misleading ............. 3

            2.    The Challenged Statements Are Inactionable Puffery ............................... 5

            3.    Defendants' Forward-Looking Statements Are Protected Under the
                  PSLRA's Safe Harbor................................................................................ 7

            4.    Plaintiffs Do Not Plead Actionable Opinion Statements........................... 9

      B.    Plaintiffs Fail to Plead a Strong Inference of Scienter............................................11

      C.    All of Defendants' Exhibits Are Properly Considered on a Motion to Dismiss....13

      D.    Plaintiffs' Objection to Defendants' Summary Chart is Unfounded .....................15

II.   The FAC Fails to State a Section 20(a) Claim...................................................15

CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re 2U, Inc. Class Action*,
   No. TDC-19-3455, 2021 WL 3418841 (D. Md. Aug. 5, 2021)............................................ 7

*In re Adobe Inc. Sec. Litig.*,
   No. 23-cv-9260-JGK, 2025 WL 936416 (2025)................................................................. 10

*Baum v. Harman Int'l Indus., Inc.*,
   575 F. Supp. 3d 289 (D. Conn. 2021) .................................................................................. 9

*Carlucci v. Han*,
   886 F. Supp. 2d 497 (E.D. Va. 2012) .................................................................................. 6

*Cozzarelli v. Inspire Pharms. Inc.*,
   549 F.3d 618 (4th Cir. 2008) ....................................................................................... 14, 15

*Dunn v. Borta*,
   369 F.3d 421 (4th Cir. 2004) ............................................................................................... 7

*Edwards v. McDermott Int'l*,
   No. 4:18-cv-04330, 2022 WL 3927828 (S.D. Tex. Aug. 30, 2022) ................................... 15

*Emps' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*,
   61 F.4th 369 (4th Cir. 2023) ................................................................................................ 8

*Est. of Green v. City of Annapolis*,
   696 F. Supp. 3d 130 (D. Md. 2023) .................................................................................... 14

*Fanucchi v. Enviva Inc.*,
   No. 22-02844-DKC, 2024 WL 3302564 (D. Md. July 3, 2024)..................................... 3, 13

*San Antonio Fire & Police Pens. Fund v. Dentsply Sirona Inc.*,
   732 F. Supp. 3d 300 (S.D.N.Y. 2024)................................................................................. 13

*In re Genworth Fin. Inc. Sec. Litig.*,
   103 F. Supp. 3d 759 (E.D. Va. 2015) ................................................................................. 10

*Hirtenstein v. Cempra, Inc.*,
   348 F. Supp. 3d 530 (M.D.N.C. 2018) ............................................................................... 11

*Janies v. Cempra, Inc.*,
    816 Fed. App'x. 747 (4th Cir. 2020) .................................................................. 11

*Karri v. Oclaro, Inc.,*
    No. 18-cv-03435, 2020 WL 5982097 (N.D. Cal. Oct. 8, 2020) ........................... 9

*Marsh Grp. v. Prime Retail, Inc.*,
    46 F. App'x 140 (4th Cir. 2002) ........................................................................ 8

*In re Medimmune, Inc. Sec. Litig.*,
    873 F. Supp. 953 (D. Md. 1995) ........................................................................ 7

*Omnicare*, *Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .......................................................................................... 11

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) .................................................................................. 7

*Saskatchewan Healthcare Emps' Pension Plan v. KE Holdings Inc.*,
    718 F. Supp. 3d 344 (S.D.N.Y. 2024) .............................................................. 14

*Sinnathurai v. Novavax, Inc.*,
    645 F. Supp. 3d 495 (D. Md. 2022) .................................................................. 12

*Sohovich v. Avalara, Inc.*,
    No. 24-1646, 2025 WL 957895 (9th Cir. Mar. 31, 2025) .................................... 9

*Tr. v. Carbonite, Inc.*,
    22 F.4th 1 (1st Cir. 2021) .................................................................................. 12

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ............................................................................ 14

## STATUTES

15 U.S.C. § 78u-5(e) ..................................................................................................14

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the FAC (ECF No. 37) (the "Motion") and in response to Plaintiffs' memorandum of law in opposition to Defendants' Motion (ECF No. 43) (the "Opposition").[1]

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition does not meaningfully address the FAC's many legal deficiencies. The Opposition simply repeats the FAC's unsupported fraud theory that Elanco concealed adverse results from a vaccine study submitted as part of the FDA approval package for Zenrelia. But Plaintiffs effectively concede, as they must, that Elanco had no duty to disclose the vaccine study or any portion of Zenrelia's FDA application. Instead, the Opposition focuses on Elanco's statements during the purported class period about Zenrelia's potential future profitability and "differentiation" from competitor products in the event of FDA approval.[2] According to the FAC, these statements were misleading because, at the end of the class period, the FDA required a boxed warning based on the results of the one study. The Opposition lays bare that the FAC's fraud allegations are unsupported and based entirely on hindsight. The Opposition does not, because it cannot, point to any allegations that Defendants knew the FDA would require a boxed warning at the time the challenged statements were made. This is fatal to Plaintiffs' claims.

Plaintiffs' Opposition resorts to misrepresenting their own pleading to get around the FAC's deficiencies. Plaintiffs repeatedly suggest that the vaccine study concluded Zenrelia was unsafe—it did not and the FAC does not plead otherwise. Rather, Zenrelia was found safe and effective at the label dose, but in the vaccine response study, dogs receiving 3x the label dose experienced adverse reactions. Plaintiffs also suggest Defendants created the impression that no

---

[1] Capitalized terms not defined herein have the same meaning set forth in the memorandum of law filed in support of Defendants' Motion (ECF No. 37-1) (the "Memorandum").

[2] The Opposition fails to address, and thus abandons, nearly half of the challenged statements in the FAC.

1

adverse study data existed—not so. To the contrary, as shown in the Motion and below, Defendants made no promises about Zenrelia's potential future differentiation or profitability. They made only general, optimistic statements about Zenrelia's future prospects, while expressly warning that the outcome of the FDA approval process could not be assured. Plaintiffs have no meaningful response to the authorities cited in the Motion that such general statements do not require disclosure of details about the FDA submission, including adverse events in clinical trials. The challenged statements are also all forward-looking statements protected by the PSLRA safe harbor or are nonactionable opinions or puffery. Putting the lie to Plaintiffs' fraud, Zenrelia ultimately *was* positively differentiated—both as to effectiveness and convenience— and Defendants remained confident in Zenrelia's potential notwithstanding the boxed warning.

Plaintiffs also fail to identify any facts that could support a strong inference of scienter. Plaintiffs rely primarily on FE-1, who admittedly had no knowledge of Zenrelia and left Elanco before the class period and thus could not have known what information Defendants possessed at the time the challenged statements were made. There are simply no contemporaneous facts contradicting Defendants' statements, let alone any facts supporting an inference of fraudulent intent more compelling than the obvious non-fraudulent inference: Elanco hoped for a favorable launch of Zenrelia, which was slightly impacted by the box warning, but nonetheless successful.

## ARGUMENT

### I. THE FAC FAILS TO STATE A SECTION 10(B) CLAIM

#### A. The Opposition Fails to Show that Any Challenged Statement is Actionable

As an initial matter, the Opposition fails to address, and thus abandons, over half the challenged statements in the FAC. This includes all of the statements concerning the expected timing of FDA approval and all but one of the statements regarding the FDA approval process. Because Plaintiffs fail to respond to any of the arguments in the Motion concerning these

statements, Plaintiffs have conceded that those statements are not actionable.[3] *See Fanucchi v. Enviva Inc.*, No. 22-02844-DKC, 2024 WL 3302564, at *8 (D. Md. July 3, 2024) ("Plaintiff does not respond to this argument in [the] opposition and has therefore conceded the point."). These statements are not actionable for the reasons stated in the Motion and must be dismissed.

The only statements addressed in the Opposition are optimistic statements concerning the potential future profitability (e.g., revenue and margin) and differentiation of Zenrelia.[4] Plaintiffs continue to argue that the vaccine study rendered all these statements false and misleading. Plaintiffs fail to rebut Defendants' showing in the Motion that these statements were not contradicted by any undisclosed adverse facts and are all nonactionable puffery, protected forward-looking statements, and statements of opinions which Plaintiffs have failed to plead were objectively false or not genuinely believed.

### 1.     The Vaccine Study Does Not Render Any Statement Misleading

As demonstrated in the Motion, adverse events are common in clinical trials and do not make a particular outcome from the FDA approval process—let alone a boxed warning— inevitable or give rise to a duty to disclose details of an FDA submission. Mem. 13-14. The challenged statements here were general statements about Zenrelia's potential future prospects accompanied by express risk warnings. Courts have routinely held similar statements do not

---

[3] The statements Plaintiffs have tacitly conceded are identified on pages 1-5 of Defendants' summary chart (Ex. 1) and at pp. 12 of the Motion, including (i) the portions of FAC ¶¶ 82, 88, 91, 99, 117, 119, 120, 123, 129, 136, 138, 140, 142, 146 concerning the timing of FDA approval and (ii) the portions of FAC ¶¶ 85, 88, 91, 119, 120, 126, 129, 133, 138, 142, 146, 154 regarding the FDA approval process. *See* Opp. 15 (asserting that there are "three types" of allegedly misleading statements, none of which include statements about timing or the FDA approval process).

[4] *See, e.g.*, FAC ¶ 144 (expressing confidence that Zenrelia will be differentiated from current market option), ¶ 99 (describing Zenrelia as one of several "potential blockbuster products"); *see also* FAC ¶¶ 82, 94, 97, 103, 106, 109, 112, 113, 116, 117, 119, 120, 123, 126, 138, 146, 148, 151, 157, 160; Mot. 12 n.8-10; Ex. 1 at 6-10. In addition, Plaintiffs challenge a single statement that there was "no new real news here. And that's good news," FAC ¶ 106. *See* Opp. 15. Plaintiffs argue that the vaccine study was "plainly *very bad news*," *id.* at 16, but, as discussed below and in the Motion, the study did not make any particular outcome inevitable, *see infra* 12; Mem. 13-14, and the FAC does not allege there was any "news" from the FDA at the time this statement was made.

require disclosure of adverse trial data.[5] Mem. 14-16. The Opposition contains no meaningful response to this showing and fails to refute the extensive authority cited on these points.

Instead, Plaintiffs attempt to circumvent the FAC's fatal pleading defects by inventing new allegations in their Opposition. Plaintiffs repeatedly argue that the vaccine study concluded that Zenrelia was unsafe to administer to dogs concurrently with vaccines, and thus Defendants knew before the class period that Zenrelia would be "negatively differentiated" compared to competitor products and its profits and margins would be negatively affected. Opp. 15-19. But the study made no such findings, *see* Mem. 13-14, and the FAC contains no allegation that it did. Rather, as shown in the Motion, Zenrelia was found safe and effective at the label dose, while dogs in the vaccine study receiving 3x the label dose experienced adverse reactions. Mem. 8. The Opposition tacitly admits as much because it only cites the FDA's conclusion at the end of the approval process in June 2024, that Zenrelia should contain a box warning regarding the administration of Zenrelia concurrent with vaccines. *See* Opp. 4, 5, 16, 21 (all citing FAC ¶ 50); Ex. 35 (ECF No. 37-38). Likewise, Plaintiffs' allegations that Zenrelia's profitability would be impacted are tied to the FDA's final label and decision to limit the number of treatment days before and after vaccines. *See* FAC ¶¶ 66, 76, 162. These decisions post-date all the challenged statements and there is no allegation in the FAC that Defendants knew at the time of the statements that these decisions were inevitable. Further, Plaintiffs' repeated refrain that Zenrelia was found to be "unsafe," Opp. 19, is pure fabrication. The FDA expressly found Zenrelia is "safe and effective when used according to the labeling." Ex. 35 at 3; Mem. 9.

Plaintiffs also misrepresent the challenged statements in arguing Defendants created a "false impression that no [] adverse information existed." Opp. 16-17. But Defendants said

---

[5] For the avoidance of doubt, the Motion made this argument as to every single statement challenged in the FAC. *See* Mem. 13 ("[N]one of the challenged statements are rendered misleading by the vaccine response study.").

4

nothing about the contents of the submission to the FDA or the studies that were conducted. Defendants did not make any specific projections or promises about Zenrelia's financial prospects and spoke in only general terms about potential positive results "over time." Mem. 6; *see also* Ex. 1 at 6-10. No reasonable investor would understand the challenged statements as representing that no adverse data existed.

Indeed, as demonstrated in the Motion, the challenged statements were accompanied by express warnings that there could be no guarantees until a final decision by the FDA. Mem. 6. Plaintiffs argue these warnings were "generic," Opp. 19, without discussing any of them. To the contrary, Defendants made specific warnings about the precise risks Plaintiffs claim were concealed, including that the FDA's "interpretation of studies on product safety" could impact results and that product differentiation depended on the "final label." Mem. 4-7, 20-21. Plaintiffs' argument that the disclosed risks had already materialized, Opp. 19, likewise fails because the study had not concluded Zenrelia was unsafe. Plaintiffs' attempts to twist the FAC's allegations and Elanco's disclosures cannot—and does not—save the FAC from dismissal.[6]

### 2.    The Challenged Statements Are Inactionable Puffery

As shown in the Motion, the challenged statements are general, optimistic statements about Zenrelia's potential future differentiation and profitability[7] that lack the type of specific guarantees required to be actionable. Mem. 16-18; *see also, e.g.*, FAC ¶ 144 ("We remain confident this product will be differentiated from the current market option."), ¶ 109 ("overall,

---

[6] Plaintiffs' attempt to distinguish *MacroGenics* and *Chapman*, cited at Mem. 15, fails because, as in those cases, the challenged statements did not give rise to a duty to disclose adverse trial studies. Opp. 17 n.6. Plaintiffs also ignore the other authorities at Mem. 15-16.

[7] Plaintiffs wrongly claim Defendants did not argue in the Motion that certain statements were inactionable puffery. Opp. 20. The Motion asserted that all of the "challenged statements concerning Zenrelia's potential future 'differentiation,' market adoption, and profitability" are puffery, Mem. 18, and defined those statements as including FAC ¶¶ 82, 94, 97, 99, 103, 106, 109, 112, 113, 116, 117, 119, 120, 123, 126, 138, 144, 146, 148, 151, 157, 160. *Id.* at 12 n.8-10. The relevant statements regarding differentiation and profitability are also identified on Ex. 1 at 6-10.

we expect to continue to drive gross margin and operating profit higher over the next few years"). The statements were also accompanied by express disclaimers making clear there were no assurances regarding future results, including that "until you have the final label [approved by the FDA] . . . differentiation is still being defined" and "[w]e cannot predict whether any products, once launched, will be commercially successful or will achieve revenue that is consistent with our expectations." Mem. 19 (quoting Ex. 21 at 2 and Ex. 4 at 26).

Plaintiffs' sole response is that the challenged statements are not puffery because they were specific statements of fact that could be "proven true or false." Opp. 20-21. But this argument is untethered from the statements at issue and ignores the numerous cases cited in the Motion finding similar statements nonactionable.[8] Mem. 16-19. For example, Plaintiffs claim "whether Zenrelia was positively differentiated from Apoquel" was a "question that could be proven true or false." Opp. 20. But almost all the challenged statements regarding differentiation speak to non-specific *potential future* differentiation, that necessarily could not be "proven false" at the time the statements were made. *See, e.g.*, FAC ¶ 146 ("we continue to expect the products to be differentiated versus the current offering"); *id.* ¶¶ 97, 99, 144, 151. To the extent other statements described Zenrelia as a "differentiated asset," *id.* ¶¶ 117, 120, 126, "differentiation" is inherently vague and would not be understood by any reasonable investor as guaranteeing a specific result. *See Carlucci v. Han*, 886 F. Supp. 2d 497, 522 (E.D. Va. 2012) (puffery includes "[i]ndefinite statements of corporate optimism" that are "so vague, so lacking in specificity, or so clearly constituting [opinions], that no reasonable investor could find them important to the total mix of information"). Moreover, Plaintiffs admit Zenrelia *was* positively differentiated for effectiveness and convenience. Opp. 17. And, Defendants expressly warned that differentiation

---

[8] Plaintiffs' attempt to distinguish *Macrogenics* fails because it is based on the unsupported premise that the vaccine study concluded Zenrelia was unsafe and would require a warning. *See supra* 4-5.

depended on final FDA approval. Mem. 6; Ex. 21 at 2 ("differentiation is still being defined").

Defendants likewise did not make specific promises about future revenue or margins for Zenrelia that could be "proven false." Opp. 21. Again, Defendants' statements, such as "*we expect* to continue to drive gross margin and operating profit higher *over the next few years*," FAC ¶ 109 (emphasis added), are the type of generalized, optimistic statements about expected *future* performance that courts routinely find inactionable.[9] *See, e.g.*, *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) (statements about "expected annual growth rate of 10% to 30% over the next several years" are inactionable "soft, puffing" statements). Indeed, Plaintiffs entirely ignore the authority from this Court holding such "expression[s] of hope or expectation regarding future approval, not worded as guarantees, are not actionable." *In re Medimmune Sec. Litig.*, 873 F. Supp. 953, 964 (D. Md. 1995). Plaintiffs do not address the weight of this authority and their cited cases, Opp. 19-22, are inapposite because they concern objective statements of past or present fact, not optimistic statements regarding the future. *See, e.g.*, *Dunn v. Borta*, 369 F.3d 421, 431 (4th Cir. 2004) (defendant made "very specific misrepresentations," including that it "had sold 225 CoasteRider units"); *In re 2U, Inc. Class Action*, No. TDC-19-3455, 2021 WL 3418841, at *5, *15-16 (D. Md. Aug. 5, 2021) (defendant said "lower margins were not a sign of 'continual degradation' but were instead 'a matter of choice,'" despite knowing projected revenue had declined).

### 3.    Defendants' Forward-Looking Statements Are Protected Under the PSLRA's Safe Harbor

As the Motion demonstrated, the challenged statements are classically forward-looking because they concern Zenrelia's potential FDA approval and future commercial prospects.[10] The

---

[9] Defendants also warned that they "cannot predict whether any products, once launched, will be commercially successful or will achieve revenue that is consistent with our expectations." Ex. 4 at 26.

[10] The challenged forward-looking statements include (i) the statements regarding differentiation in FAC ¶¶ 97, 99,

statements are protected by the PSLRA safe harbor both because (i) they are accompanied by meaningful cautionary language and, independently, (ii) because Plaintiffs fail to allege facts showing Defendants actually knew any statements were misleading. Mem. 20-22.

Plaintiffs contend none of the challenged statements were forward-looking but were statements of present fact not entitled to the safe harbor.[11] Opp. 23. Plaintiffs' argument ignores the clear forward-looking portions of the challenged statements, as well as surrounding context expressly explaining Zenrelia's performance depended on future FDA approval. *See* Mem. 6 ("until you have the final label . . . differentiation is still being defined"). The statements clearly concerned potential *future* differentiation and expected *future* performance, which are inherently forward-looking. *See supra* 6-7; Mem. 6; FAC ¶¶ 97, 99, 120, 138, 144, 146, 151.[12]

Plaintiffs also remarkably argue that the challenged statements are statements of present fact because they conveyed "present expectations and beliefs." Opp. 23. This flies in the face of logic and well-settled Fourth Circuit precedent holding "statements of present belief regarding future events" are forward-looking for purposes of the PSLRA safe harbor. *Marsh Grp. v. Prime Retail, Inc.*, 46 F. App'x 140, 146-47 (4th Cir. 2002); *see Emps' Ret. Sys. of the City of Baton Rouge & Par. of E. Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369, 389 (4th Cir. 2023) (holding the "present tense portion" of "we anticipate [a trend] to continue," is protected because "the statement—read in its entirety—is forward-looking"). The cases Plaintiffs cite are also

---

144, 146, and 151 and (ii) the statements concerning profitability in FAC ¶¶ 94, 103, 106, 109, 112-13, 116, 119, 120, 146, 148, and 157. *See* Mem. 19 (identifying the forward-looking statements as including those about differentiation and commercial prospects); *see also* Ex. 1 at 6-10 (listing statements).

[11] Plaintiffs also assert, incorrectly, that Defendants make the safe harbor argument only with respect to "a handful of statements." Opp. 22. To the contrary, the Motion clearly asserted that "[n]early every challenged statement" was forward-looking, specifically including the statements regarding differentiation and future performance. *See* Mem. 19; Mem. 12 n.8-10 (defining the statements regarding differentiation and future performance); Ex. 1 at 6-9.

[12] Plaintiffs cite FAC ¶ 29 as a "Differentiation Statement," however, the FAC does not specifically allege that statement is false or misleading. *See* FAC ¶ 29. In any event, it is not misleading for the same reasons discussed with respect to the other statements regarding differentiation.

inapposite: they concern statements of past fact, not belief about the future. *See Sohovich v. Avalara, Inc.*, 2025 WL 957895, at *1 (9th Cir. Mar. 31, 2025) (statement about "preparation of" projections); *Karri v. Oclaro, Inc.*, No. 18-cv-03435, 2020 WL 5982097, at *5 (N.D. Cal. Oct. 8, 2020) (same); *Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 298 (D. Conn. 2021) (concerning "clear assertion of historical fact: that . . . management had determined something").

Unable to dispute that the statements were accompanied by extensive and meaningful cautionary language, Mem. 21; *supra* 5-6, 8, Plaintiffs once again argue that the risks concerning Zenrelia had already materialized such that the safe harbor does not apply because of the vaccine study. Opp. 24. As discussed above, the vaccine response study (one of many submitted to the FDA) did not conclude Zenrelia was unsafe for vaccinated dogs and, even if it had, that would not have necessarily resulted in a boxed warning by the FDA which happened in June 2024. Because the challenged forward-looking statements were accompanied by meaningful cautionary language the safe harbor applies.[13] Mem. 20-21.[14]

Plaintiffs also argue that the safe harbor does not apply because Defendants had "actual knowledge" that the statements were misleading. Opp. 24. For the reasons explained in the Motion and below at 11-13, Plaintiffs fail to plead scienter, let alone meet the higher bar to plead *actual knowledge* of falsity. *See infra* 11-13; Mem. 22.

### 4. Plaintiffs Do Not Plead Actionable Opinion Statements

The Motion demonstrated that nearly all of the challenged statements—including the

---

[13] Plaintiffs argue the adequacy of the cautionary language is a fact issue that cannot be decided on a motion to dismiss. Opp. 24. Courts routinely find forward-looking statements accompanied by meaningful cautionary language like here, are protected on a motion to dismiss. *See* Mem. 21-22 (citing cases). That is part of the gatekeeping function of the PSLRA.

[14] For the avoidance of doubt, the cautionary language discussed in the Memorandum accompanied or was incorporated into all of the statements challenged in the FAC at ¶¶ 82, 85, 94, 99, 106, 109, 119, 120, 123, 125-26, 138, 140, 142, 144, 146, 148. The remaining challenged statements are also protected by the safe harbor because Plaintiffs fail to plead actual knowledge of falsity. Mem. 22.

statements about differentiation and profitability—are statements of opinion because they express subjective expectations of future results, and they are not actionable because Plaintiffs plead no contemporaneous facts contradicting the opinions.[15] Mem. 22-24. Indeed, the FAC alleges ample support for Defendants' opinions notwithstanding the vaccine study. Mem. 24-25.

Plaintiffs argue that statements not "prefaced by qualifiers such as 'we believe' or 'we think'" are not statements of opinion, but that argument has been squarely rejected. *In re Adobe Inc. Sec. Litig.*, No. 23-cv-9260-JGK, 2025 WL 936416, at *10 (S.D.N.Y. Mar. 27, 2025) ("Statements of opinion need not be qualified with the language 'I think' or 'I believe' to constitute mere opinions."). Indeed, Plaintiffs have no response to the litany of authorities that demonstrate the statements concerning Zenrelia's differentiation and profitability are statements of opinion because they include future predictions and subjective judgment.[16] Mem. 23-24.[17]

Plaintiffs argue that the challenged statements are actionable under *Omnicare* because (i) Defendants could not have sincerely held the belief that Zenrelia would be positively differentiated and would boost sales and margins; (ii) the statements did not "fairly align" with the information in Defendants' possession and investors would not have believed Defendants' opinions had Defendants disclosed the vaccine study. Opp. 25-26. Each of these arguments depends on the same false premise discussed above—namely that Defendants knew from the

---

[15] Plaintiffs again claim that the Motion only argued a handful of statements were opinions. The Motion identified all the challenged statements concerning differentiation and profitability addressed in the Opposition as statements of opinion, including (i) the statements regarding differentiation in FAC ¶¶ 97, 99, 117, 120, 126, 144, 146, 151; (ii) the statements regarding profitability in FAC ¶¶ 94, 103, 106, 109, 112-13, 116, 119, 120, 123, 146, 148, 157, 160; and (iii) the statement there is "no new real news here" in FAC ¶ 106. Mem. 22-23; Ex. 1 at 6-10.

[16] Plaintiffs attempt to distinguish *Aratana* because it did not involve regulatory approval but do not dispute the proposition Defendants cited it for—that statements about expectations for future results are opinions. Opp. 22 n.8.

[17] Plaintiffs' reliance on *In re Genworth Fin. Inc. Sec. Litig.*, Opp. 25, is misplaced because that case concerned statements regarding the adequacy of reserves that "suggested a greater sense of certainty" than the challenged statements here. 103 F. Supp. 3d 759, 779 (E.D. Va. 2015) (defendants represented they had conducted a "broad, intensive review" of reserves and were "more confident than we've ever been that the reserves are adequate"). Here, far from conveying "certainty," Defendants repeatedly cautioned that results were *not* guaranteed. Mem. 5, 17, 21.

vaccine study alone that the FDA would require a boxed warning. *See id.* As discussed, that premise is simply not supported by any well pleaded facts. *See supra* 4.

Furthermore, Plaintiffs also fail to address the fact that, notwithstanding the vaccine study, Defendants had ample reasons to believe their optimistic opinions regarding Zenrelia's prospects, including a head-to-head study showing that Zenrelia was positively differentiated from Apoquel in efficacy and convenience. Mem. 25 (citing reasons). Plaintiffs' inability to contend with these facts only confirms that the vaccine response study could, in fact, be easily squared with Defendants' opinions. The study was, at most, a "fact cutting the other way," which does not render an opinion misleading. *Omnicare*, 575 U.S. at 194; *see also Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 556-58 (M.D.N.C. 2018) (holding "optimistic statements regarding the safety profile of [a] drug" not misleading despite omission of adverse clinical trial events), *aff'd sub nom. Janies v. Cempra, Inc.*, 816 Fed. App'x 747 (4th Cir. 2020).

### B.      Plaintiffs Fail to Plead a Strong Inference of Scienter

As shown in the Motion, Plaintiffs fail to plead the requisite "strong" inference of scienter, including because there is no alleged falsity, no alleged motive, and no alleged particularized facts showing any Individual Defendant was aware of facts that contradicted their public statements at the time they were made. Mem. 25-30.

Plaintiffs' scienter argument hinges primarily on the allegations of FE-1—a former Elanco employee who not only had no contact with the Individual Defendants and left before the class period, but also admittedly had no role in or personal knowledge of Zenrelia whatsoever. Opp. 27-28; Mem. 28. Indeed, all FE-1 offers is speculation that someone would have communicated "unexpected results" "up the food chain" to Elanco's executives. Mem. 28. As shown in the Motion, such speculation from a confidential witness lacking personal knowledge or any contact with the Individual Defendants does not establish scienter. *Id.*

11

Ignoring the plethora of authority on this point, Plaintiffs rely exclusively on *Sinnathurai* to argue that FE-1's speculation is sufficient to plead scienter. *See* Opp. 27-28. But *Sinnathurai* did not involve a sole employee who lacked any personal knowledge of the relevant information. Rather, *Sinnathurai* included at least seven confidential witnesses who were personally responsible for the operations and clinical trial results that were allegedly reported to executives. 645 F. Supp. 3d at 525-26. That is a far cry from FE-1's unsupported speculation here.[18]

Plaintiffs also claim that statements by the Individual Defendants during the class period indicate they were aware of the contents of the Zenrelia package submitted to the FDA and that they were "closely monitoring the progress and status of the approval process through" a different executive. Opp. 29. But the allegations they cite merely show a general awareness that the Zenrelia application had been submitted and overall confidence in it, not detailed knowledge of facts contradicting their public statements. *See* FAC ¶¶ 85, 88, 129, 168-70. Further, even if there were particular allegations that the Individual Defendants were aware of the vaccine study results, the study did not make it inevitable that a warning label would result. Mem. 13-14.[19]

The cases Plaintiffs cite serve only to demonstrate the inadequacy of Plaintiffs' allegations. Opp. 29. For example, in *Carbonite*, the court found the defendants were at least reckless in touting a product as "super strong" when the product had "never once done what it is supposed to do" and there were internal reports that the product didn't work. *Constr. Indus. & Laborers Joint Pens. Tr. v. Carbonite, Inc.*, 22 F.4th 1, 9-10 (1st Cir. 2021). In *Dentsply Sirona*, the individual defendants "analyzed the company's supply chain in a way that reflected detailed

---

[18] Plaintiffs attempt to downplay that FE-1 left Elanco before the class period by claiming the "relevant time period" is 2021-2023, when the vaccine study was underway. Opp. 28. This argument fails because FE-1 still had no personal knowledge of or responsibility for the study or any direct contact with the Individual Defendants. Mem. 28.

[19] Plaintiffs cite FAC ¶ 178 as showing Defendants had knowledge of "the contents of the 'package' submitted to the FDA," Opp. 28-29, but that allegation is a statement from Mr. Simmons in *August 2024*, after the class period.

knowledge" of its innerworkings. *San Antonio Fire & Police Pens. Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318-19 (S.D.N.Y. 2024). There are no similar allegations here. *Supra* 11.

The "core operations" doctrine also does not help Plaintiffs. Plaintiffs rely on the characterization of Zenrelia as a potential "blockbuster" to claim that it was a "core operation" of Elanco, Opp. 30, but they have no response to the authority cited in the Motion finding "core operations" constitutes "nearly all of a company's business." Mem. 29. As demonstrated in the Motion, Zenrelia was one of six "potential blockbuster" products in development in 2024 and just one of 200 Elanco brands. *Id.* Regardless, even if an operation is "core," the Fourth Circuit requires "particularized allegations regarding Defendants' knowledge of shortcomings" regarding those operations, which are lacking here. *Id.* (citation omitted).

Plaintiffs also do not dispute—and they therefore concede—that they allege no motive to defraud and that this "weighs heavily" against scienter. Mem. 27-28. Indeed, Plaintiffs have no response to Defendants' point that it is simply not plausible that Defendants would engage in a fraud about Zenrelia's FDA approval knowing that the truth would inevitably come out within a matter of months when the FDA announced its approval. *Id.* Plaintiffs ignore the obvious competing inference that Defendants believed their optimistic statements concerning Zenrelia.

### C. All of Defendants' Exhibits Are Properly Considered on a Motion to Dismiss

Plaintiffs fail to identify any basis to strike any of Defendants' exhibits to the Motion. First, Plaintiffs seek to strike Exhibits 3, 4, 14, 34, 37, and 38 because they are not cited in the FAC.[20] Opp. 10. Yet, those exhibits are SEC filings (Exs. 4, 14, 37, 38), a press release (Ex. 34), and an earnings call transcript (Ex. 3)—all publicly-available documents that are properly considered regardless of whether they are cited. *Fanucchi*, 2024 WL 3302564, at *4 ("District

---

[20] Plaintiffs do not dispute that the remainder of Defendants' exhibits are properly incorporated by reference into the complaint and/or subject to judicial notice.

courts in this Circuit routinely take judicial notice of newspaper articles, analysts' reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint."); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 881 (4th Cir. 2014) (taking judicial notice of SEC filings).[21]

Plaintiffs also attempt to strike *all* of Defendants' exhibits, arguing that it is "improper to treat the contents of those documents as true." Opp. 11. Defendants are not citing the exhibits for their truth. Nor are they attempting to "contradict well-pleaded allegations in the complaint." *Id.* Rather, Defendants cite the exhibits to include the complete disclosures that were made. Plaintiffs do not and cannot dispute that this is a proper use of exhibits on a motion to dismiss a securities complaint. As courts have recognized, "the proper inquiry [under Section 10(b)] requires an examination of defendants' representations, taken together and in context'" and "plaintiffs 'may not cherry pick certain public statements for [their] complaint and divorce them from the universe of disclosed information to plausibly allege fraud.'" *Saskatchewan Healthcare Emps' Pension Plan v. KE Holdings Inc.*, 718 F. Supp. 3d 344, 377 (S.D.N.Y. 2024); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) ("we must examine the facts as a whole, including facts found in 'documents incorporated into the complaint by reference'").

Moreover, certain exhibits—including the FDA's FOI Summary (Ex. 35) and Elanco's announcement that Zenrelia would have a warning label (Ex. 29)—*are* properly considered for their truth since those documents "serve[] as the factual basis for Plaintiffs' claims." *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 148 (D. Md. 2023); *see* FAC ¶¶ 50, 162-63.

---

[21] Exhibit 14 is also properly before the Court for the independent reason that the PSLRA expressly requires courts to consider on a motion to dismiss "any cautionary statement accompanying" an oral forward looking statement so long as the cautionary statements are "not subject to material dispute." 15 U.S.C. § 78u-5(e). Exhibit 14 is the slide deck with cautionary language accompanying the oral forward-looking statements alleged in FAC ¶¶ 105-09, *see* Grace Decl. ¶ 2 (Ex. 14), and Plaintiffs do not dispute the contents of Exhibit 14, or any exhibit.

### D. Plaintiffs' Objection to Defendants' Summary Chart is Unfounded

Plaintiffs' request to strike or disregard Defendants' chart summarizing the allegedly misleading statements (Exhibit 1) should be denied. Notably, Plaintiffs do not dispute that charts are permissible as a general matter to summarize voluminous allegations and arguments made in a motion to dismiss. *See* Opp. 12-14. Indeed, charts are frequently used in this Court, especially in securities class actions involving numerous alleged misstatements. *See, e.g.*, Mot. App'x A, *In re 2U, Inc. Sec. Class Action*, No. TDC-19-3455, ECF No. 144-27 (D. Md. Aug. 5, 2021).[22]

Plaintiffs nonetheless ask the Court to ignore the chart, claiming it includes arguments that are not made in Defendants' brief. Not so. The motion defined *all* of the alleged statements by category—i.e., statements about timing, FDA approval process, and Zenrelia's prospects— and then referred to the statements by category with examples rather than repeating all of the statements. *See, e.g.*, Mem. 12, 12 n.6-10, 19. The chart advances no new arguments and is intended to be a helpful tool for the Court (and Plaintiffs) to sort through the numerous alleged statements and the grounds for dismissal advanced in the Motion.[23] *Supra* notes 3, 4, 10, 11, 15.

## II. THE FAC FAILS TO STATE A SECTION 20(a) CLAIM

Plaintiffs' control person claim fails for lack of an underlying violation. Mem. 30.

### CONCLUSION

For the foregoing reasons, and those set forth in the Motion, the FAC should be dismissed in its entirety and with prejudice.[24]

---

[22] *See also Edwards v. McDermott Int'l*, No. 4:18-cv-04330, 2022 WL 3927828, at \*5 n.3 (S.D. Tex. Aug. 30, 2022) ("I view Appendix A as a helpful guide to the Court, not a devious attempt to avoid page limitations").

[23] Moreover, notwithstanding Plaintiffs' challenge, Plaintiffs were plainly on notice of the grounds for dismissal for each statement advanced in the Motion.

[24] Plaintiffs' request for leave to amend, Opp. 30, should be denied both because any amendment would be futile and because Plaintiffs have not filed a motion to amend. *See Cozzarelli*, 549 F.3d at 630 (affirming dismissal with prejudice where request to amend was in an opposition to a motion to dismiss and the "plaintiffs never filed a motion for leave to amend . . ., nor did they present the district court with a proposed amended complaint").

Dated:  August 15, 2025

                _/s/ Scott Lerner_

Scott Lerner (D. Md. Bar No. 13327)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Tel. (202) 636-3600
Fax (202) 639-9355
scott.lerner@whitecase.com

Stacy Nettleton (*admitted pro hac vice*)
Susan L. Grace (*admitted pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel. (212) 819-8200
stacy.nettleton@whitecase.com
susan.grace@whitecase.com

*Counsel for Defendants Elanco Animal Health Incorporated, Jeffrey N. Simmons, and Todd S. Young*

16